Good morning, Your Honors. Sean Sertar on behalf of the Plaintiff and the Appellant. In this putative class action, the District Court improperly granted summary judgment and we're asking Your Honors to reverse the District Court's opinion on two grounds. First, the Lindau factors, which is a three-pronged test, was misapplied because the District Court applied a bright-line test of concluding that anything under 10 minutes was de minimis. The second issue that we're asking- Is your position that the Lindau test doesn't apply to statutory California labor code claims? That's part of the argument. So it's- Why do you say that? In 2015, the California Supreme Court rendered a decision called the Mendiola decision. And in Mendiola, it provided a wealth of guidance in terms of under what circumstances federal law applies to California state law. And it discussed the wage orders and some of the wage orders specifically provide for the application of federal law. Additionally, the Mendiola decision discussed if the IWC or if the State of California wanted to apply federal law, it has done so in previous wage orders. Certain wage orders specifically describe the application of federal law applying it to California state law. Are you familiar with the case of Mosley v. Sanssoupery Vineyards and Winery? An unpublished California Court of Appeal case? I am familiar with that decision. That is a California Court of Appeal decision unpublished. But I think the guidance provided in Mendiola trumps that unpublished decision. Guidance in Mendiola was circumstantial as to this precise question. Mosley dealt with this precise question. There the claim was for 0.16 hours of delay in paying a late payment for overtime. And the court went through the Lindau factors, said they applied, found the de minimis applied, and ruled for the defendant. Now, shouldn't we take into consideration a California Court of Appeals case which is precisely on the issue rather than some guidance from Mendiola? I think Mendiola provides a little bit more than guidance. Let us deal with that. Did Mendiola mention in any way de minimis as a defense to a statutory wage claim? No. But Mendiola explained under what circumstances federal law would apply to California state wage claims. And then Mosley comes along and says, it does apply and we follow it. It is a Court of Appeals case. I disagree with the Court of Appeals decision, but you know. I know it is an unpublished decision, but we have some cases in the Ninth Circuit that follow unpublished Court of Appeals decisions if there is no superseding authority. Let me ask one follow-up question before you respond on Mosley. In Mosley, the amount of de minimis that was at issue was 0.16 hour. And Judge Bankey in that decision indicated that for her, she italicized that the issue was the total number of hours, that being 0.16. In Mosley, the vineyard, the winery actually paid the 0.16. What we came at issue was whether it was that failure to pay timely would be a basis for penalties. Is there a corner that we should draw at all? I just, I don't know the answer and wondered if you had thoughts on that topic. In terms of the penalties involved in this case, the district court summarily said that because the underlying wage claim is not valid, there are no penalties. But in Mosley, my question is the actual amount, the de minimis amount that was at issue was actually paid. So it wasn't unpaid. That compensation that was at issue was not unpaid. The question is whether there could be a penalty. If the wages are paid, there's no penalty. There's a penalty for paying them late. If the wages are paid late, obviously there is a penalty. I mean, if wages are owed, Labor Code 203 is quite clear. If they're not paid immediately, there's 203 penalties owed to the plaintiff. I hope I answered the question. Well, in Mosley, that's what the court said. So it was a long decision, only briefly addressing this particular issue. And the only issue that was left was whether or not they would have to pay late penalties based upon that failure to pay that 0.16 hour in a timely basis. And the court there said they didn't. We've sprung this on you, so. Okay. You know, I apologize, Your Honor. In terms of Mosley, I think every case has to be determined on its own. I think we need to apply Lindau. If the court decides that de minimis is the law when it applies to California state law claims. One other point that we made in relation to the de minimis factor is none of these cases dealt with 1194.2. Either Mosley or Rudy or Lindau, under 1194.2, the California state legislature said that minimum wage is not waivable. So by applying a de minimis defense, you're effectively creating a judicially created waiver of minimum wage. We cited two different California federal regulations that indicates that all hours worked must be paid, however small. And those issues were not discussed in Mosley. Those issues were not discussed in Lindau. And this is a equitable federal defense that's been created and it's being applied to a California state law claim. And if the California legislature wanted to apply federal law to a California wage law claim, they're perfectly capable of writing that into the statute. They're perfectly capable of writing those into the wage orders. It's been done before and that was the point of Mendiola. Had the, had, if there was intent by the California legislature to apply federal law to California wages, it would have been written into the code. You have a point there, sir. In Mosley, the late payment of the already paid 0.16, was that waivable? Were the penalties for that late payment waivable? No. Why would you be able to waive penalties? I'm not asking a philosophical question of whether, why, but is there any statute which says that a worker cannot waive his right to get a penalty for late payment? I mean, you said you can't waive the minimum. I understand that. Is there a similar non-waiver provision regarding late payment? I think it would defy common sense if you're entitled to funds and for you to be able to waive it. Why would anybody waive something that they're entitled to? Plus. Because it was de minimis. Plus on top of that, if you're going to waive it, you need to, you need to be able to understand that you're entitled to it. So. So the answer is you don't know a case one way or the other that makes the penalty for late payment waivable or not waivable. I don't think that it's, I don't think that it's waivable. And I think if, if you're going to be able to waive something, you need to tender it or at least advise the individual that you're entitled to it and we're making it available for you and we can waive it. We'll waive it. When it applies to the Lindau factors, it's clearly that the Lindau factors were not followed. They had the alarm records to show to the second. And when they clocked out, they clocked out to the second, the alarm records kept the records to the second. The time was kept in the aggregate when you, when you apply Lindau, when you apply Rudy. Lindau says when you keep track of this time when you're determining whether the time is in the aggregate, if it's significant, you add up all of the time over the course of that. Plus we cited to additional case law that says, especially in a class action, you take those circumstances into consideration. Starbucks has 18,000 stores all over the world. They have tens of thousands of employees in that. There's no issue, not even the district court found that in terms of regularity, it happened every single closing shift. In terms of administrative difficulty, there was none. They have the alarm records and in fact, they devised the system this way so that they had to clock out and they had to do this critical work that if they didn't do it, they're subject to discipline and firing. They're uploading all of the payroll records. They're uploading all of the sales records and the fact of the matter is that it took several minutes and there's no reason for the district court to have held that this is de minimis. This is a class or plaintiff or plaintiff and when you look at the time in the aggregate factor, which is one of the three factors, you can look towards plaintiff plus what adds insult to injury is you look at the class as well. What was the amount of time for the plaintiff? We presented 13 hours. Defendant admits that it's over four hours. So the way I look at it is if I was taking money out of somebody's wallet, would they have a problem with it? I'm sure if any of us went into Starbucks and we shortchange them by 30 or 40 or 50 cents when we ask them to purchase a cup of coffee, they're not going to serve us. And when you look at this equitable defense and Lindau was in 1984 and all of the case law that has come down since Lindau has said that it's a fluid analysis. We take a look at life circumstances. We take a look at the technology at hand. They kept track of the time and they could have paid them for the hours worked. Was there any evidence in the record with respect to the first element of the test, that being the practical administrative difficulty? Was there actually evidence in the record or was that just argument and did the district court just surmise with a conclusion to that question? The district court surmised and they used this bright line test of if it's less than 10 minutes, it's not practical to keep track of that time. I don't think anywhere in the court's order it addressed the disputed issue of fact that they could have compared the alarm records. I mean, how difficult is it to take the alarm records and put it into a spreadsheet and compare it to the hours worked and pay them the one minute, two minutes, three minutes, whatever it was for that time. There was no dispute about that. Any other questions from the court? No, thank you. Thank you. Good morning. May it please the court. My name is Rex Heineke and I'm here on behalf of Starbucks. We, of course, believe that the district court's decision should be affirmed. While the plaintiffs raise peripherally a couple things like bringing in the patio furniture and so on, what this case is really about and what they focus on is the alarm time. That is, the employee had to turn off the computer, say they were checking out, turn on the alarm, walk out the door, flip the lock, and it's that time that they're really complaining about here. We submit that that time is de minimis. Before I get to that, maybe I should deal with the issue the court raised about whether or not California law recognizes a de minimis defense, and we think that that is answered by the Gillings case by this court. Now, we acknowledge it's an unpublished decision, but in that case, this court pointed to the Gomez case and said that Gomez held, as a matter of California law, that the de minimis defense applied. It went on to say another case had assumed it had said it was an open question, but given that law, I don't see how anyone could conclude that the de minimis defense does not apply here. In Gomez, there was a payment, right? I'm sorry? In Gomez, they found that it wasn't de minimis. They found sufficient hours. I don't, frankly, I don't remember what they found on that. My only point is that they found that the de minimis defense did apply, and then they went on and decided. And in Gomez, what was the actual legal analysis that the court conducted? Or did it just say that that's what it thought without any analysis? I think it said that was what California law was. Right, so no analysis. Would you agree with me on that? Yes, but I don't think that matters, respectfully, because it's for this court to look and say, okay, what is California law? And even if the California courts have simply said, ipsy dixit, this is our law, without looking to any cases, without citing any authority, that is still California law until it's changed. Mr. Hickey, is there a distinction between the basis of the claim for wages in Gomez, which was a wage claim based on an agreement for to pay for time worked, and a labor code violation claim as is made in this case? In other words, between a common law contract and a statutory code claim. As to the de minimis questions, I don't see any difference, Your Honor, because the de minimis doctrine has been applied across a number of areas, and just the court applying it in one area that is on a contract claim nevertheless indicates or suggests that California law is that it applies to a statutory claim. And there's no case that says it doesn't apply to a statutory claim. That's true. So I think the role of this court is to try and puzzle out where the California courts, not whether they're right or whether they're wrong, but what is California law? Why don't you say something then about Mendiola, which you didn't have an opportunity to brief because it came out after your opposition. I mean, there it indicates, and the Supreme Court states, California is free to offer greater protection, that is from federal protections or regulations. And we've stated that absent convincing evidence of the IWC's intent to adopt the federal standard, we decline to import any federal standard. I mean, that's what it says. What is more persuasive than the Supreme Court's indication that it will not necessarily, or that it will protect employees in California to a greater extent than that of the federal? Right. Well, look, we don't dispute that California can, if it makes a choice, give greater protections to employees than federal law gives to employees. There can't be any doubt about that, I think. The question is, what is California law? And I don't think there's anything in Mendiola that says that you have to expressly say under California law that we follow the federal rule. What the California courts have done is they've looked at state law, and if it's different than or more protective than federal law, then that applies. But there isn't anything to indicate that California law on this point is any different. So where does the IWC express its intent to adopt the de minimis standard? I don't think the IWC expressed any intent on that issue one way or the other. And so doesn't this then suggest that because it has failed to, that California is not going to import that de minimis standard? No, I don't think that's the way California law has worked. California law has said, if there are gaps in our law, we look to federal law. Of course, if we say X is the state law, then that's the end of it. But if it's an issue where California hasn't declared what its policy is, then California looks to federal law to see what the policy is. And I think that's all that's happened here. Now, on the issue of assuming the de minimis rule applies, on the question of how does it apply here, on the alarm issue, we submit that the Ruddy case answers this. There are two different things that Ruddy looks at. It looks at activities before the employee goes to work and activities after the employee finishes work. If you look at what the court says about activities before the employee goes to work, the issue there is the employees regularly filled out contract, or papers, filled out forms, not contracts, but filled out forms before they went to work. And they were seeking to be paid for that. And this court said there that that time, which was a minute or so, and which happened every day for all the employees, was de minimis. And we submit that's the situation here. The District Court said, and the plaintiffs don't dispute, that the time here was ordinarily one minute to walk out the door and turn the lock on. So that seems to fall comfortably within what Ruddy says. It's de minimis because it's such a small amount of time, even if it's regular. And that's all there is here. It's ordinarily one minute, and 90 percent of the time, it was two minutes. So you haven't addressed the third factor, and that's the question I asked to the plaintiff's attorney, which is, I was looking in the record for the actual evidence that Starbucks submitted to the District Court for consideration with respect to the administrative difficulty and found none. Am I missing something? Well, no, Your Honor. I think it was. Based on these facts, that the records the plaintiffs want to rely on are records that Starbucks doesn't control. They're records at the alarm company. But Starbucks has the burden of proof, doesn't it? Yes, but there was no dispute that these are the alarm company's records, not Starbucks' records. So the system that Starbucks has implemented now addresses this but in fact, that's not the evidence. The evidence is that the two systems, that is, logging out and turning on the alarm, used to be dependent on each other and they're no longer dependent. But there's no evidence that an employee doesn't still have to log out of the system for purposes of being paid and walk out the door and turn on the alarm. So this question about do you get paid for the time basically walking from your desk to the door and locking the door exists whichever system is there. Now, the plaintiffs say repeatedly, no, it doesn't. But look at what they say. They say that. They never cite anything because there isn't anything. For example, on page six of their opening brief, they say this. There's no evidence of that. And keeps track of how long you work at some point and you've got to walk out the door and you've got to lock the front door no matter what system you're using. As a district court said, there's always going to be some small little amount of time involved in doing that that's not going to end up being compensable. And that's all we're fighting about really here. The other things that they're complaining about are completely irregular. There's no way to keep track of them like bringing in patio furniture and they're not compensable in any event. So what this boils down to is the minute or two it took to walk out the door. Is it your position, Mr. Henke, that the calculation of that minute or two over the years that the man works is difficult of administrative calculation? It's difficult in the sense that you would have to go and get the records from the alarm company for every store closure every day in California. And that's a fair administrative burden. See, because what you need is you need two things to calculate this. You need the logout, the time the person signed off work. We have that. But you also need the time the alarm was turned on. That alarm company has. And why can't those records be made available? I didn't say they couldn't be made available. Of course you can get your hands on them. Our point is that it's a substantial practical problem to go do that for every store for every day and get it from all the alarm companies that Starbucks uses. It's not impossible, but the question is surely isn't it possibility? Because in all these cases you can think up a way that the employer could have kept track of the time. I mean in Lindau, for example, there were two groups, but the first part of the case was about people who showed up early and looked at the log books before they went to work and wanted to be compensated for that. Well, the employer obviously could hire someone to monitor what the employees are doing and keep track of that time. It can't be for the administrative difficulty that it has to be impossible. It just, and as the decisions I believe say, it's a question of practical administrative difficulty. And as a practical question here. So I know you focused on one minute. The record actually suggests that there's more than a minute. And we'll obviously go back and look at the record. But my question to you is, is 10 minutes de minimis? 12 minutes? 15 minutes? At what point does it stop being de minimis from your perspective? Your Honor, may I say something first, which is on the alarm, what I said and what the district court said is that on average it was one minute for the alarm. And for 90% of the time for the alarm, it was two minutes. Now the district court does go on to say that if you add in these other things, patio furniture, walking people to their cars, it could be as much as four minutes. And on rare occasions it was 10 minutes. But my point was for the alarm, it was one to two minutes. So let's then talk about the 10 minutes. Is that de minimis under your perspective? Well, I think the way the court should analyze it is, and I think all the cases have said this, that 10 minutes is usually de minimis. But I think you have to look at the other factors. But here, to the extent that there's any time that hits anything close to 10 minutes, that time isn't compensable because Starbucks didn't know about it and Starbucks didn't insist that employees do it. But if 10 minutes is de minimis, are you talking about 10 minutes one day or 10 minutes over the man's work life? Oh, the 10 minutes was irregular. If you look at what the district court said, it wasn't 10 minutes. The district court never said that there was 10 minutes every day for each person. But let's suppose that the plaintiff undertakes the task of showing how many minutes, one or two minutes a day, over his whole life work. And he undertakes the task of putting those together and gets 13 hours. Is 13 hours de minimis? No, Your Honor, I don't think it is. Because the whole root of this doctrine, the de minimis doctrine, is Anderson versus Mount Clements pottery. And if you look at the facts there, the amount of what was involved was the time walking from where the employee came into the premises to their workstation. And the Supreme Court said that time varied, but it was 2 minutes to 12 minutes. And the Supreme Court said that the de minimis doctrine applied to that situation. Because it used the daily amount, not the work life amount. Right, because otherwise the de minimis doctrine comes to an end. If what you can do is do what the plaintiffs want to do, which is aggregate it in a class action, then the amount of time is never going to be de minimis. All you need is a large class and the time could be trivial, 10 seconds, but if you could aggregate it for a million employees, the number turns out to be something substantial. And in Anderson versus Mount Clements property, 2 minutes to 12 minutes over a substantial period of time, in the way the plaintiff wants to aggregate time, would turn out to be substantial. But I submit that that's contrary to what the Supreme Court said in Mount Clements Pottery. And also it's contrary to all the decisions out there that say, not that 10 minutes is an absolute rule, but that is a rough rule of thumb, usually 10 minutes is de minimis. Now there may be reasons to change that amount of time. But here what we're talking about is 1 to 2 minutes. I think you've exceeded your time. Yes, thank you. Mr. Sitara, would you like to rebut? I think that to allow Starbucks to create a system as they did, because they're the ones that created the system that now claim that it's not administratively feasible. And as Judge Rogers correctly pointed, and I believe that's part of her questions, there was no real evidence submitted by Starbucks in terms of the administrative feasibility. So what Starbucks did is they created a system where they clocked out and had to perform work and then turn on the alarm and leave. All we're asking for is compensation for the time worked after they clocked out. There's no dispute that the time was kept. There's no dispute that they devised this system and they could have devised it differently. Because we know based upon the record, and this is undisputed, that Starbucks ultimately got rid of this system in which they have all these people, including plaintiff, to do a significant amount of off-the-clock work. Significance, a minute here, two minutes there, in the aggregate, which is pursuant to the Lindau factors, is quite significant. Let me ask you that. Is the de minimis inquiry directed to per plaintiff per day or per plaintiffs per class per work life? It's twofold. It's per plaintiff in the aggregate over the course of their employment, plus we cite it to additional authority when you take a look at it in a class action. We think what occurred to plaintiff individually, because it happened every single day, it happened on every single closing shift, and we know 100% that they kept track of the time because of the alarm records, plus to add insult to injury, they devised this plan, whether negligently or intentionally, to underpay individuals. To allow a defendant to devise a plan to underpay people consistently, a minute, two minutes, and as defense counsel says, up to 10 minutes, and then for the trial court and possibly an appellate court to bless that and to come into court, come into a trial court, whether it be a state or federal court, and say, well, it doesn't matter if it happened every single day. It doesn't matter if we know that it's occurring, and by the way, we devised this record-keeping system where you clock out and, you know, just sweep this stuff here and bring the furniture in and let's do these other tasks, and then upload the records, and then clock out, but because you already clocked out and we devised the plan, it's not really administratively feasible to underpay these people. Thank you very much. Thank you. Thank you. All right. The case of Troster versus Starbucks Corporation will be submitted. Court thanks counsel for their presentation.
judges: Fernandez, Bea, Rogers